UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Cindy A. Rossiter

     v.                                  Civil No. 10-cv-349-JL
                                          Opinion No. 2011 DNH 115
Michael J. Astrue, Commissioner,
Social Security Administration

**MEMORANDUM ORDER**

This is appeal from the denial of Cindy A. Rossiter's claim for Social Security Disability Insurance Benefits ("DIB").  It presents the question of whether an administrative law judge ("ALJ") at the Social Security Administration ("SSA") can reject such a claim by determining that the applicant was not disabled as of her date last insured without consulting a medical advisor, even when the determination rests on ambiguous evidence.[1]  This court has subject-matter jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Rossiter argues that the ALJ's approach violates an SSA Policy Statement, "SSR 83-20."  See Social Security Ruling 83-20, Program Policy Statement: Titles II and XVI: Onset of Disability

---

[1] A "[c]laimant is not entitled to [DIB] unless he can demonstrate that his disability existed prior to the expiration of his insured status," i.e., his date last insured.  Cruz Rivera v. Sec'y of HHS, 818 F.2d 96, 97 (1st Cir. 1986).  A claimant's date last insured is a function of his or her age and earnings history.  See 20 C.F.R. §§ 404.130, 404.132.

(PPS-100), 1983 WL 31249 (S.S.A. 1983).  This court agrees. Accordingly, for the reasons set forth fully below, the court grants Rossiter's motion to reverse the ALJ's decision and remands the case for further consideration under SSR 83-20.

## I.   <u>Background</u>

Rossiter claimed she was disabled by a number of impairments, including headaches, pain in her neck and upper extremities, vision loss, and depression, as of her date last insured, September 30, 2003.  The ALJ found that as of that date Rossiter was not engaged in substantial gainful activity, <u>see</u> 20 C.F.R. § 404.1571, and suffered from severe impairments, <u>see</u> <u>id.</u> § 404.1520(c), limited to degenerative disc disease, myofascial pain syndrome, and degenerative changes to the left shoulder.

The ALJ went on to find, however, that as of September 30, 2003, these severe impairments did not meet or medically equal a listed impairment, <u>see</u> <u>id.</u> § 404.1520(d), and that Rossiter had the residual functional capacity to perform light work with certain limitations (<u>viz.</u>, no overhead reaching with her left arm or work around dangerous machinery or extreme temperatures), <u>see</u> <u>id.</u> § 404.1567(a).  Thus, the ALJ found, while Rossiter could not perform her past relevant work as of September 30, 2003, <u>see</u> <u>id.</u> § 404.1520(f), she could have performed jobs existing in the

2

national economy in significant numbers, see id. § 404.1560(c), including small product assembler, cafeteria or school child care attendant, addresser, or food and beverage order clerk.  So the ALJ concluded that as of Rossiter's date last insured she was not disabled, see id. § 404.1520(g)(1), disentitling her to DIB, see 42 U.S.C. § 423(a)(1)(E).  In reaching this decision, the ALJ neither consulted a medical advisor nor determined whether Rossiter was disabled as of the date of the hearing (as opposed to her date last insured).

The SSA's Decision Review Board ("DRB") affirmed the ALJ's ruling, see 20 C.F.R. § 405.440(c)(1), so that affirmance is the final decision on Rossiter's claim, see id. § 405.440(b)(1), which she has appealed to this court, see 42 U.S.C. § 405(g). Rossiter has moved for an order reversing the decision, see L.R. 9.1(b)(1), while the Commissioner has cross-moved for an order affirming it, see L.R. 9.1(d).

## II.  **Applicable legal standard**

"Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  So if the ALJ's decision was based on "a legal or factual error," or otherwise

unsupported by substantial evidence, then it must be reversed and remanded under § 405(g).  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).

## III. **Analysis**

Rossiter argues that the ALJ made a legal error by finding that she was not disabled as of her date last insured without calling on the services of a medical advisor, in violation of SSR 83-20.  SSR 83-20 states in relevant part that:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination . . . . How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred.

Id. at *3.  As the court of appeals has observed, SSR 83-20 thus "require[s] the ALJ to consult a medical advisor" when "the evidence regarding the date on which [a] claimant's . . . impairment became severe is ambiguous."  May v. SSA Comm'r, 125 F.3d 841 (table), 1997 WL 616196, at *1 (1st Cir. Oct. 7, 1997); see also, e.g., Grebenick v. Chater, 121 F.3d 1193, 1200-01 (8th Cir. 1997); Ried v. Chater, 71 F.3d 372, 374 (10th Cir. 1995); Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995).

4

The Commissioner argues that this requirement did not apply
here, for two reasons.  First, he maintains, because the ALJ
never decided one way or the other whether Rossiter became
disabled after her date last insured, there was no onset date
about which to consult a medical advisor.  Second, the
Commissioner asserts, there was no ambiguity about whether the
onset date of Rossiter's claimed disability preceded her date
last insured.[2]  The court rejects these arguments.

## A.   SSR 83-20 applies even though the ALJ did not decide whether Rossiter was disabled after her onset date

As the Commissioner acknowledges, his first argument against
applying SSR 83-20 has been expressly rejected by two other
judges of this court.  See Bica v. Astrue, 2009 DNH 171, 9-10
(McAuliffe, C.J.); Ryan v. Astrue, 2008 DNH 148, 17-19
(Barbadoro, J.); see also Moriarty v. Astrue, 2008 DNH 158, 17-18

---

[2]The Commissioner does not dispute that SSR 83-20 is binding
on the SSA.  See, e.g., Mason v. Apfel, 2 F. Supp. 2d 142, 146
n.3 (D. Mass. 1998) (citing cases).  Nor does the Commissioner
argue that the language of SSR 83-20, providing that the ALJ
"should" (rather than "shall" or "must") call on the services of
a medical advisor under certain circumstances, ultimately leaves
that decision to the ALJ.  See Fedele v. Astrue, 2009 DNH 090, 11
n.7 (DiClerico, J.) (observing that "the reference to a medical
advisor in SSR 83-20 is not mandatory, so that failure to comply
may not require reversal of the ALJ's decision") (citing
Eichstadt v. Astrue, 534 F.3d 663, 667 (7th Cir. 2008)).
Accordingly, this court will not consider the significance (if
any) of that formulation here.

(McAuliffe, C.J.).  The Commissioner urges this court not to follow these decisions because "they rest upon a faulty premise, i.e., that the ALJ is required to make a finding of present disability in a DIB-only case."

As the Commissioner explains, while a claimant's present disability is essential to eligibility for another kind of Social Security benefits, known as "supplemental security income" or "SSI," Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999) (citing 42 U.S.C. § 1381a), it is not essential to eligibility for DIB, which depends instead on whether the claimant's "disability existed prior to the expiration of his insured status," Cruz Rivera, 818 F.2d at 97.  Thus, the Commissioner asserts, a finding as to whether the claimant is disabled at the time of the hearing "simply [is] not required" where the claimant seeks only DIB, as opposed to SSI, or both DIB and SSI--leaving the ALJ free to find that the claimant was not disabled as of the date last insured without regard to SSR 83-20.

The Commissioner may well be correct that an ALJ considering a claim for DIB only does not need to decide whether the claimant was disabled at the time of the hearing, but can rather decide simply whether the claimant was disabled as of her date last insured.  It does not follow from this point (which this court need not and does not resolve), however, that the ALJ's use of

this approach makes SSR 83-20 inapplicable.  As Judge Barbadoro

has observed, an ALJ's decision that a claimant was not disabled

as of her date last insured is, for all intents and purposes, a

decision about the onset date of her disability, and "SSR 83-20

straightforwardly states that an ALJ 'should call on the services

of a medical advisor when onset must be inferred.'"  <u>Ryan</u>, 2008

DNH 148, 17-18 (quoting 1983 WL 31249, at *3).

     This clear command does not include an exception for cases

when the ALJ does not decide whether the claimant was disabled as

of the hearing, but only as of the date last insured.  Nor does

the Commissioner identify anything elsewhere in the text of SSR

83-20 suggesting that it applies only when the ALJ finds the

claimant disabled as of the hearing.  To the contrary, SSR 83-20

refers in several places to the importance of onset date to a DIB

claim,[3] then goes on to set forth the rule that the ALJ "should

_____

     [3]These references include:  "[i]n many claims, the onset
date is critical; it may . . . even be determinative of whether
the individual is entitled to or eligible for any benefits";
"disability insurance benefits (DIB) may be paid for as many as
12 months before the month before an application is filed.
Therefore, the earlier the onset date is set, . . . the greater
the protection received"; "[a] Title II worker cannot be found
disabled under the Act unless insured status is also met at a
time when the evidence establishes the presence of a disabling
condition."  1983 WL 31249, at *1.

call on the services of a medical advisor when onset must be inferred."  1983 WL 31249, at *3.

In light of this structure, it is difficult if not impossible to read SSR 83-20 as permitting an ALJ to make the "critical" determination of onset date in a DIB case--which, again, is functionally what the ALJ is doing by finding that the claimant was not disabled as of the date last insured--without consulting a medical advisor (at least if the onset date must be inferred from ambiguous medical records).  See Grebenick, 121 F.3d at 1200.  As Judge Barbadoro has put it, "there is no support in the text of SSR 83-20 for the Commissioner's position" that the ruling is irrelevant when the ALJ decides only that the claimant was not disabled as of her date last insured.  Ryan, 2008 DNH 148, 17-18.

The Commissioner neither attempts to identify any support for his view in the language of SSR 83-20 nor engages the reasoning of Ryan in any meaningful way.  The Commissioner simply criticizes Ryan for wrongly requiring the ALJ to decide, in reviewing a claim for DIB only, whether the claimant was disabled at the time of the hearing.[4]  Again, though, that criticism is

---

[4]The Commissioner also attributes the so-called "confusion over the need to find a present disability" in a DIB case to the fact that, in Moriarty, Chief Judge McAuliffe relied on a decision where the claimant had sought not only DIB, but SSI.

beside the point. Even if SSR 83-20 does not require the ALJ to decide whether a claimant seeking only DIB is disabled as of the hearing, it <u>does</u> require the ALJ to consult with a medical advisor in inferring the onset date of the claimant's disability and, as <u>Ryan</u> explains, that is functionally what the ALJ is doing in deciding from ambiguous evidence that the claimant's onset date did not precede her date last insured. 2008 DNH 148, 17-18.

The Commissioner also relies on decisions by other courts of appeals and other district courts within this circuit that "SSR 83-20 simply does not apply when the ALJ determines that the plaintiff was not disabled."[5] <u>See</u> <u>Eichstadt</u>, 534 F.3d at 667; <u>Nix v. Barnhart</u>, 160 F. App'x 393, 396-97 (5th Cir. 2005); <u>Scheck v. Barnhart</u>, 357 F.3d 697, 701 (7th Cir. 2004); <u>Asbury v. Comm'r of Soc. Sec.</u>, 83 F. App'x 682, 686 n.3 (6th Cir. 2003); <u>Key v. Callahan</u>, 109 F.3d 270, 274 (6th Cir. 1997); <u>Crane v. Shalala</u>, 76

---

See <u>Nelson v. Barnhart</u>, No. 04-193, 2005 WL 1231500, at *1 (D. Me. May 24, 2005). But <u>Nelson</u> (which, it should be noted, gives no indication that its holding was limited to claims for DIB) was not the only, or even the primary, basis for Chief Judge McAuliffe's decision in <u>Moriarty</u>, which relied heavily on Judge Barbadoro's decision in <u>Ryan</u>. 2008 DNH 158, 17-18. As just discussed, <u>Ryan</u> does not reflect any "confusion" over the difference between DIB and SSI claims, and the Commissioner does not seriously argue to the contrary.

[5]The Commissioner acknowledges, and this court agrees, that the Court of Appeals for the First Circuit has not addressed this issue.

F.3d 251, 255 (9th Cir. 1996); Sousa v. Astrue, No. 08-216, 2009
WL 3401196, at *9 (D.R.I. Oct. 21, 2009); Kovacs v. Astrue, No.
08-241, 2009 WL 799407, at *4 (D. Me. Mar. 23, 2009), rept. & rec
adopted, 2009 WL 982235 (D. Me. Apr. 10, 2009); Lisi v. Apfel,
111 F. Supp. 2d 103, 111 (D.R.I. 2000).

As the Commissioner acknowledges, though, there is authority
to the contrary.  See, e.g., Blea v. Barnhart, 466 F.3d 903, 911
(10th Cir. 2006); Walton v. Halter, 243 F.3d 703, 709 (3d Cir.
2001); Grebenick, 121 F.3d at 1200-01; cf. Sam v. Astrue, 550
F.3d 808, 810-11 (9th Cir. 2008) (suggesting that SSR 83-20
applies if "there was either an explicit ALJ finding or
substantial evidence that the claimant was disabled at some point
after the date last insured," but not if "the ALJ explicitly
found that [the claimant] was not disabled at any time").
Furthermore, in at least some of the cases that the Commissioner
cites in support of his position, the ALJ specifically determined
that the claimant was not disabled as of the hearing.  See
Scheck, 357 F.3d at 701; Asbury, 83 F. App'x at 686 n.3; Crane,
76 F.3d at 255; Sousa, 2009 WL 3401196, at *9.  When a claimant
suffering from a progressive impairment is not even disabled by
the time of the hearing, there is no reason for the ALJ to
consult a medical expert to decide whether the claimant was
disabled at some earlier point:  logic dictates that if the

impairment has not worsened to a disabling level by the hearing date, then it could not have been at a disabling level at any prior point.[6]  Cf. Grebenick, 121 F.3d at 1201.  Here, however, the ALJ did not decide whether Rossiter was disabled at the time of the hearing, and therefore could not have logically concluded from her present condition that she was not disabled at any prior point, including her date last insured.  At least some of the cases the Commissioner cites, then, are off point here.

Insofar as the Commissioner's cases hold that SSR 83-20 does not apply unless the ALJ finds that the claimant was disabled at some point, this court does not consider those decisions persuasive, for essentially the same reasons that Judge Barbadoro gave in rejecting that interpretation in Ryan.  See 2008 DNH 148, 17-18.  First, and most importantly, they do not convincingly address the plain language of SSR 83-20.[7]  Again, that language

---

[6]To qualify as a disability for purposes of DIB, an impairment must be expected to last for a continuous period of at least 12 months, or result in death.  42 U.S.C. § 423(d)(1)(A).

[7]As Judge Barbadoro observed in Ryan, some of the cases "attach significance to the statement in the introduction to SSR 83-20 that 'in addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.'"  2008 DNH 148, 19 n.7 (quoting 1983 WL 31249, at *1, and citing Eichstadt, 534 F.3d at 667, and Key, 109 F.3d at 274).  This court agrees with Judge Barbadoro, though, that this statement "does not in any way suggest SSR 83-20 is inapplicable in cases where an ALJ denies a claim for DIB by finding that the claimant was not disabled as of her date last insured."  Id.

is that the ALJ "should call on the services of a medical advisor
when onset must be inferred," without any exception for cases
when the inference is drawn solely for the purpose of determining
whether the disability existed as of the date last insured.

Second, as Judge Barbadoro reasoned in Ryan, deciding that
the claimant was not disabled as of her date last insured
implicates the same difficulty as does selecting the onset date
for a claimant who has been found to be disabled at some later
point. 2008 DNH 148, 17-18. As SSR 83-20 recognizes, that
difficulty inheres "when, for example, the alleged onset and the
date last worked are far in the past [relative to the hearing]
and adequate medical records are not available." 1983 WL 31249,
at *2. But these sorts of difficulties in fixing when a
claimant's impairment may have reached a disabling level "do[]
not disappear when an ALJ bypasses a determination of present
disability and instead denies a DIB claim based on a finding that
the claimant was not disabled as of her date last insured."
Ryan, 2008 DNH 148, 18.

This court agrees with Judge Barbadoro, then, that "there is
no good reason why SSR 83-20 should be limited to cases in which
the ALJ makes a determination of disability before addressing the
onset date of the disability." Id. Neither the Commissioner nor

the cases he cites here provide any such reason.[8]  On this point, this court elects to follow the decisions of other judges of this court rather than the decisions of other courts cited by the Commissioner, and rejects his argument that SSR 83-20 does not apply unless the ALJ first finds that the claimant was disabled.

**B.   Rossiter's medical records are ambiguous as to whether the onset date of her disability preceded her date last insured**

The Commissioner has a fallback position, as noted at the outset:  even if SSR 83-20 applies, it nevertheless did not require the ALJ to consult a medical advisor as to the onset of Rossiter's disability because her medical records were not ambiguous as to whether she was disabled as of her date last insured.  The Commissioner is correct that under SSR 83-20 "'a medical advisor need be called only if the medical evidence of onset is ambiguous,'" as this court recently observed.  Mills v. Astrue, 2011 DNH 097, 18 (quoting Ried, 71 F.3d at 374, and citing additional authorities).  This court disagrees with the

---

[8]The Commissioner argues that his view that SSR 83-20 does not apply unless the ALJ finds the claimant disabled as of the hearing date is "reasonable and entitled to deference."  But courts in this circuit "do not defer to [an agency's] views espoused only in the context of litigation."  Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 12 (1st Cir. 1999).  Thus, insofar as the Seventh Circuit's opinion in Eichstadt suggests that such "deference" is appropriate, as the Commissioner argues, this court cannot follow that decision.

Commissioner, however, that Rossiter's medical records unambiguously demonstrate that she was not disabled as of September 30, 2003, making it unnecessary for the ALJ to consult a medical advisor as to onset date.

As the ALJ noted, Rossiter has "a history of intermittent treatment for headaches and neck pain dating back to January 1995."  The treatment was "intermittent" in the sense that, as the ALJ also observed, Rossiter received no medical attention for these issues between June 1998 and May 2000, or between June 2000 and November 2003.  X-rays of Rossiter's spine taken on November 11, 2003, however, indicated degenerative disc disease.[9]  One month later, on December 11, 2003, Rossiter saw a physician's assistant, Russell Dorr, complaining of "increasing pain in her neck spreading into the left shoulder down her left arm" and "numbness and weakness" in that arm.  Dorr noted that Rossiter had a "[h]istory of disk disease in the cervical spine for many years, and she has tried many alternative approaches to avoid surgery."  He also observed a decreased range of motion in her neck.  In the meantime, Rossiter stopped working at her job as a

---

[9]While the medical records suggest that these x-rays were taken on December 11, 2003, the parties' joint statement of facts gives the date as November 11, 2003.

14

clerk at a video store in December 2003 because, she testified at the hearing, the pain in her neck "was getting so bad."

On December 30, 2003, Rossiter saw a neurologist, who noted her complaint that pain in neck and left arm, intermittent since 1998, had increased earlier that month. Rossiter underwent an MRI of her spine a few days later, revealing degenerative changes, herniation, and other problems with certain discs. Dorr referred Rossiter to a neurosurgeon, Dr. Theodore Jacobs, who she saw on January 12, 2004, complaining of pain and weakness in her neck, left arm, and left leg. Rossiter said she had been suffering these symptoms "on and off" since 1998 but they were "increasing in severity and [were] at [their] worst right now."

Jacobs concluded that Rossiter's "degenerative changes . . . and disk herniation are responsible for her recent bout of symptoms and likely in the past" and discussed possible surgical interventions. Rossiter elected to undergo surgery to her spine, including a removal of one of her discs and a fusion of the two surrounding vertebrae, on January 27, 2004. After a follow-up appointment the next month, Jacobs observed that Rossiter was "doing well overall" with "excellent relief of her symptoms in her left upper extremity." He later observed, in a visit on April 12, 2004, that Rossiter was having "good days and bad days; on good days she is relatively pain-free and on bad days--such as

15

today--she has some stiffness in her neck and some slight discomfort . . . , with some minimal pain in the . . . left arm."

Yet, the very next day, Rossiter told her physical therapist that her pain had returned to a level 9 on a scale of 0-10 and that her headaches had become persistent.  Rossiter continued to complain of headaches, neck pain, and numbness in visits with doctors, including Jacobs, during the summer and fall of 2004. Jacobs, for his part, observed in August 2004 that Rossiter "appear[ed] to be recovering quite well from her surgery . . . however she [did] appear to be having more symptoms," including headaches and "significant discomfort" in her neck.

In September 2004, Rossiter began receiving a series of trigger point injections at largely regular intervals.  She reported "good progress" from this treatment during a January 2005 visit with Jacobs, complaining of "primarily neck discomfort," and made similar comments to other doctors in the summer and early fall of 2005.  Rossiter returned to work, as a part-time administrative assistant at a martial arts studio, in October 2005.  In November 2005, however, Rossiter told one of her doctors that her overall pain level had decreased by only about 30 percent, and he observed that "the pain [is] causing a great deal of anxiety."  But in January 2006 Rossiter told the same doctor that her pain had gotten "significantly better" after

16

she had started a new medication, Cymbalta, and the next month she told Jacobs that she was "doing quite well" apart from some "moderate neck discomfort."

Yet Rossiter complained of worsening pain in April 2006--and quit her job at the martial arts studio in May 2006 because, she later testified, she "just couldn't even come in because of [her] neck." She reported increased relief again in June 2006, after she began taking a different medication, Topomax. Similarly, after complaining in September 2006 that her headaches had returned, she reported in October 2006 that her headaches and other pain had been "controlled" by an increased dosage.

Rossiter made similar reports of successfully controlling her headaches and pain throughout the rest of 2006. In February 2007, however, her dosage of Topomax was reduced after she complained of numbness and tingling in her arms, resulting in worsened pain (at a level of 6 on a scale of 0-10, particularly when she moved her neck). In April 2007, after she stopped using Topomax altogether, she reported that the pain had worsened yet again and that her headaches had increased in frequency. But in June 2007, after resuming Topomax, Rossiter reported that the "pain is nearly gone," rating only between 0 and 1 on a scale of 0-10. On September 5, 2007 she complained of "generalized pain, but better since restarting Topomax."

17

This record is ambiguous as to whether Rossiter's impairments, particularly her degenerative disc disease, had become disabling by September 30, 2003.  There is evidence that signs of degenerative disc disease appeared in an x-ray of Rossiter's spine taken less than six weeks later, on November 11, 2003.  Jacobs concluded, based on an MRI taken about six weeks after the x-ray, that those degenerative changes were responsible for Rossiter's pain and weakness in her neck and left arm, both recently and in the past.  Rossiter told a number of providers throughout December 2003 and January 2004 that her symptoms had recently worsened and, indeed, were at their "worst," and quit her job due to neck pain in December 2003.  Perhaps most importantly, Rossiter--who, in managing her neck pain for years, had "tried many alternative approaches to avoid surgery"--elected to undergo major surgery to her spine in January 2004.

It is true that all of these developments came after Rossiter's claimed onset date.  As the Commissioner acknowledges, though, "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether [the] claimant's impairment(s) reached disabling severity <u>before</u> claimant's insured status expired." <u>Moret Rivera v. Sec'y of HHS</u>, 19 F.3d 1427 (table), 1994 WL 107870, at *5 (1st Cir. Mar. 23, 1994) (citing cases).

18

Indeed, that is one of the key premises of SSR 83-20:  "it may be possible, based on the medical evidence[,] to reasonably infer that the onset of the disabling impairments occurred some time prior to the date of the first recorded medical examination" or even "the date the claimant stopped working."  1983 WL 31249, at *3.  So the fact that Rossiter had not sought medical treatment for her neck pain for more than three years leading up to her claimed onset date, which the Commissioner emphasizes, did not itself render the record of her condition unambiguous and SSR 83-20 inapplicable.  See Blea, 466 F.3d at 912-13 (ruling that SSR 83-20 prohibited the ALJ from inferring that the claimant was not disabled as of his date last insured based on a contemporaneous "gap in medical treatment"); Moriarty, 2008 DNH 158, 16 (ruling that, under SSR 83-20, the fact that the claimant did not seek treatment for his condition until two years after his claimed onset date was "not dispositive of [his] application for disability benefits").

The Commissioner also emphasizes that Rossiter's "condition significantly improved with treatment following her date last insured."  While that is certainly one permissible construction of the record, it is not the only one.  Rossiter did report "excellent relief of her symptoms" just following her January 2004 surgery, but by April 2004 was complaining that her pain had

19

returned to a level of 9 and was now accompanied by persistent
headaches.  Similarly, while Rossiter reported "good progress"
from her regimen of trigger point injections in January 2005, she
later said they had decreased her pain by only about 30 percent;
her reported pain continued to oscillate throughout 2006 and
2007, as she experienced varying degrees of success in trying to
control it with a series of different medications.  She tried to
return to part-time work in October 2005, but quit several months
later because of her neck pain.

In light of this complicated history, the court simply
cannot agree with the Commissioner that "[t]he medical evidence
unambiguously shows that [Rossiter's] impairments were not at a
disabling level of severity, even many years after September 30,
2003."  SSR 83-20 requires the ALJ to consult with a medical
advisor in setting the onset date "in all but the most plain
cases," Bailey, 68 F.3d at 80, and this case is anything but
"plain" as to whether Rossiter's degenerative disc disease was
disabling as of her date last insured or, indeed, at any point
thereafter.[10]  Despite the Commissioner's suggestions to the

---

[10]This case is also readily distinguishable from others,
cited by the Commissioner here, ruling that the record was
unambiguous as to the onset of the claimant's disability so that
no medical consultation was necessary.  See Kelley v. Barnhart,
138 F. App'x 505, 509 (3d Cir. 2005) (no "objective medical
evidence" for nearly 8 years following the claimed onset date,

20

contrary, "the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [the claimant] was not disabled" as of the claimed onset date, but on "whether the evidence is ambiguous" on that point.  <u>Grebenick</u>, 121 F.3d at 1200.

As just discussed, the evidence of record is ambiguous as to whether Rossiter's impairments had reached a disabling level as of her date last insured, September 30, 2003.  The ALJ erred, then, by ruling that Rossiter was not disabled as of that point without consulting a medical advisor.  <u>See</u>, <u>e.g.</u>, <u>May</u>, 1997 WL 616196, at *2.  This case must be remanded so that consultation can occur and for the ALJ's further consideration in light of SSR 83-20.  <u>See</u> <u>id.</u>

---

and "the only relevant objective medical evidence"--less than one year's worth of records prior to the claimed onset date--was "far from conclusive"); <u>Grebenick</u>, 121 F.3d at 1201 (medical records indicated that claimant's symptoms "had not yet reached the disabling level" within the two years <u>following</u> her claimed onset date); <u>see also</u> <u>Mills</u>, 2011 DNH 097, 18-19 (one isolated complaint of knee pain just after claimed onset date, followed by no complaints of knee pain for the next five years).  The Commissioner also cites <u>Fedele</u>, 2009 DNH 090, 11, but that case did not consider whether the claimant's medical records were ambiguous as to her claimed onset date, only whether they were "adequate," and <u>Magnusson v. Astrue</u>, 2009 DNH 054, 19-25 (Barbadoro, J.), but that case actually ruled that there <u>was</u> an ambiguity as to onset date that necessitated a medical advisor.

## III. <u>Conclusion</u>

For the foregoing reasons, Rossiter's motion to reverse[11] the ALJ's decision is GRANTED, the Commissioner's motion to affirm the ALJ's decision[12] is DENIED, and this case is REMANDED for further proceedings under sentence 4 of 42 U.S.C. § 405(g). The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 15, 2011

cc:  Janine Gawryl, Esq.
     Gretchen Leah Witt, AUSA

---

[11]Document no. 8.

[12]Document no. 10.